UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00269-MOC-DJK

| | | |
|---|---|---|
| **TRAVELERS PROPERTY CASUALITY COMPANY OF AMERICA,** | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| **SERETTA CONSTRUCTION MID-ATLANTIC, LLC, AND R. MICHAEL ALLEN, ADMINISTRATOR OF THE ESTATE OF JUAN VARGAS MARTINEZ** | ) ) ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Summary Judgment (#22) and defendant's Motion for Summary Judgment (#25). Having considered the parties' motions and reviewed the pleadings, the court enters the following Order.

### I.  Background

On May 23, 2016, Juan Vargas Martinez, was fatally injured while driving a truck insured under a commercial auto policy issued by plaintiff. The accident was caused by a negligent driver who was operating a truck that was also insured by plaintiff. The at-fault party's policy had $1,000,000 liability limits which were exhausted by payments of $7,890.49 to N.C. Wheels, Inc., for its property damage, $1,752.90 to the owner of a third vehicle that was also damaged in the accident, and a third payment of $990,354.66 to Mr. Martinez's estate, a defendant herein. The commercial auto policy also provided underinsured motorist coverage with a policy limit of $1,000,000.

-1-

Plaintiff filed this action seeking a declaratory judgment that its policy of business automobile insurance does not provide underinsured motorist coverage for the estate's wrongful death claim. Defendant's estate counterclaimed and is seeking a declaration that plaintiff's policy does provide underinsured motorist coverage for its wrongful death claim. Although the total damages sustained by the estate of the decedent have yet to be determined, defendant's estate maintains they have a right to Underinsured Motorists Benefits ("UIM") under the policy provided by plaintiff.

**II.     Legal Standard**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it may affect the suit's outcome under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). The burden then shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury

could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

The Court views evidence and any inferences from evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The question posed by summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

Where insurance policies are concerned, the courts of the State of North Carolina have long held that insurance policy provisions should be "construed liberally so as to provide coverage, whenever possible by reasonable construction." State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 539 (1986) (citing Moore v. Hartford Fire Ins. Co., 270 N.C. 532 (1967)). The effect is to broaden coverage available to the insured, such that "provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured." Id. (citing Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348 (1970)).

When interpreting a policy's language and terms, "[i]f no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506 (1978). Should words or provisions be ambiguous or "capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder." Id. In determining the meaning of a policy's terms, the court must strive for consistency, and ensure that

the "various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." Id. Finally, determining the meaning of policy language is a question of law for the court. Wachovia, 276 N.C. at 354 (citations omitted).

**III.    Discussion**

The court has reviewed the parties' pleadings and the rest of the record. Plaintiff seeks declaratory relief against the estate on three issues, as asserted in its Complaint (#1-1): (1) the insurance policy is subject to the mandatory provisions of the North Carolina Financial Responsibility Act, and under that act any available underinsured motorist benefits are limited to $9,643.39; (2) setting aside the UM statute, there is either no coverage or limited coverage under the provisions of the UM or UIM endorsement to the policy; and (3) under the other insurance provisions of the UM or UIM endorsement, any potential underinsured motorist benefits are limited to $9,643.39. The court will consider plaintiffs' claims in turn.

1. *Plaintiff's Motor Vehicle Safety and Financial Responsibility Act claim*

First, the court will consider whether the policy issued to the employer (the "Seretta policy") is subject to the mandatory provisions of North Carolina's Motor Vehicle Safety and Financial Responsibility Act 20-279.21(b)(4) (hereinafter the "FRA"). Although the Seretta policy was issued in Florida, it is undisputed that the Seretta policy should be interpreted under the laws of North Carolina. "All contracts of insurance on the property, lives or interests in this State shall be deemed to be made therein, and all contracts of insurance the application of which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof." N.C.G.S. § 58-3-1. As such, North Carolina law applies.

The FRA requires that carriers provide underinsured motorist coverage as part of certain policies of automobile insurance. N.C.G.S. § 20-279.21. The Act also lays out several exceptions to the policy:

> Notwithstanding the provisions of this subsection, no policy of motor vehicle liability insurance applicable solely to commercial motor vehicles as defined in G.S. 20-4.01(3d) or applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage . . . Any motor vehicle liability policy that insures both commercial motor vehicles as defined in G.S. 20-4.01(3d) and noncommercial motor vehicles shall provide underinsured motorist coverage in accordance with the provisions of this subsection in an amount equal to the highest limits of bodily injury liability coverage for any one noncommercial motor vehicle insured under the policy, subject to the right of the insured to purchase greater or lesser underinsured motorist bodily injury liability coverage limits as set forth in this subsection. For the purpose of the preceding sentence, noncommercial vehicle shall mean any motor vehicle that is not a commercial motor vehicle as defined in G.S. 20-4.01(3d, but that is otherwise subject to the requirements of this subsection.

N.C.Gen.Stat. § 20-279.21(b)(4). Where the provisions of a statute apply to an insurance policy, the statutory provisions control. Sutton v. Aetna Cas. & Sur.Co., 382 S.E.2d 759 (N.C. 1989). Even so, insurance carriers are at liberty to provide more generous coverage than is required by statue. Hlasnick v. Federated Mutual Ins. Co., 539 S.E.2d 274, 276 (2000). Therefore, whether the Seretta policy has exceeded the requirements laid out by the FRA will ultimately determine plaintiff's coverage limits, as the Act allows underinsured motorist carriers to take a credit against their coverage limits for amounts paid under applicable liability policies. In other words, if the Seretta policy does not exceed the requirements of the FRA, then the provisions of the statute would apply and would limit any available Underinsured Motorist benefits to $9,643.39, as opposed to a limit of $1,000,000.

Plaintiff argues that the Seretta policy supplies the mandatory amount of coverage required by the Financial Responsibility Act and supplies no coverage in excess of what is required.

Specifically, plaintiff evaluates the language "any motor vehicle liability policy that insures both commercial motor vehicles . . . and noncommercial vehicles shall provide underinsured motorist coverage in accordance with the requirements of this subsection," to mean that underinsured motorist coverage is required for fleet policies covering commercial and noncommercial vehicles. In sum, plaintiff contends that a commercial fleet policy only or a noncommercial fleet policy only does not require coverage, but that a mixture of commercial and noncommercial in a fleet policy requires underinsured motorist coverage, and as such, the statutory provisions control.

The estate contends that the underinsured motorist coverage is more generous than the coverage required by the FRA, and that the policy should be enforced according to the terms in the policy. Defendant focuses on the FRA's language that "no policy of motor vehicle liability insurance applicable solely to commercial vehicles . . . or applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." N.C.Gen.Stat. § 20-279.21(b)(4). Defendant further argues that the policy is more generous than the coverage required by the FRA because the Act exempts policies applicable to fleet vehicles from any requirement to provide underinsured motorist coverage.

In considering this issue, the court "must determine how the Supreme Court of [North] Carolina would rule." Twin City Fires Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In determining state law, the court "must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." Assicurazionioni Generali S.p.A. v. Neil, 160 F.3d 997, 1002 (4th Cir. 1998). The North Carolina Appellate Court held that "in construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in

accordance with reason and common sense and did not intend untoward results." Henderson v. Henderson, 758 S.E.2d 681, 684 (N.C. App. 2014).

The Eastern District of North Carolina found that an insurance company is not required to provide underinsured motorist coverage to policies "applicable solely to fleet vehicles." National Union Fire Insurance Company of Pittsburgh, PA v. Njuguna, 15 F.Supp.3d 637 (E.D.N.C. 2014). There, an insurance company sought a declaratory judgement action as to whether its automobile liability insurance policy provided underinsured motorist coverage for claims made in an underlying wrongful death lawsuit. The court looked to the statute, specifically the language "[not] withstanding the provisions of this subsection, no policy of motor vehicle liability insurance . . . applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." Id. at 643. The court also made note of the language "[a]ny motor vehicle liability policy that insures both commercial . . . and noncommercial motor vehicles shall provide underinsured motorist coverage. However, it reasoned this sentence did not apply to fleet vehicles because of the language above exempting all fleet policies from providing underinsured motorist coverage. Thus, the court held "policies solely applicable to fleet vehicles are exempt, regardless of whether they contain both commercial motor vehicles and noncommercial motor vehicles." Id. at 645 (citing to W. Am. Ins. Co. V. Terra Designs, Inc., 2014 WL 1309110, at *10 (W.D.N.C. Mar. 31, 2014) (where the court held that if "the statutory text is plain and unambiguous—no policy of motor vehicle liability insurance applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage.")).

After considering the arguments and reviewing applicable decisions, the court agrees with the estate that the Seretta policy supplies more generous coverage than is required by the FRA

because the language in the statute clearly provides that fleet policies are exempt from providing underinsured motorist coverage, and holding otherwise would produce bizarre and inconsistent results. In an attempt to head off this result, plaintiff argues that the *dicta* in the cited cases is unpersuasive because the court in Terra Designs does not discuss the implications of commercial and noncommercial policies. Further, it argues that such court's statement that insurance companies are not required to provide underinsured motorist coverage in policies "applicable to solely fleet vehicles" is incorrect. Plaintiff contends that such a holding reads the second and third sentences out of the statute altogether, since a nonfleet policy, which insures both types of vehicles, would be required to provide underinsured motorist coverage.

While well made, the court is not persuaded by plaintiff's arguments. While it is true that underinsured motorist coverage is required for nonfleet commercial and noncommercial policies, the fleet policy cannot be compared to the nonfleet policies. Nonfleet policies are required to provide UIM coverage for policies that cover noncommercial vehicles only, whereas fleet policies are not required to provide underinsured motorist coverage for noncommercial only policies. The statute clearly makes a distinction between fleet and nonfleet policies by providing that "no policy of motor vehicle liability insurance . . . applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." N.C. Gen. Stat. § 20-279.21(b)(4). Because there is a distinction between fleet and nonfleet policies, that distinction must be given effect by distinguishing those policies here.

The estate contends that interpreting the FRA in the method plaintiff suggests would impose the following: 1) fleets comprised entirely of noncommercial vehicles would not be required to provide Underinsured Motorist coverage, 2) fleets comprised entirely of commercial

-8-

motor vehicles would not be required to provide Underinsured Motorist coverage, and 3) fleets comprised of both noncommercial and commercial motor vehicles must provide Underinsured Motorist coverage. Defendant concludes that such a reading would result in bizarre consequences, a result contrary to what North Carolina courts instruct should be sought in construing the State's statutes. Henderson at 684. Only requiring fleet policies that cover commercial and noncommercial vehicles to provide UIM insurance would indeed be bizarre, as there is no clear legislative purpose for doing so. As such, the court holds that the Seretta policy provided voluntary underinsured motorist coverage, and that the FRA's provisions do not apply. However, as explained below, this does not necessarily mean that the coverage exists that defendant seeks.

   2. *Plaintiff's claim that the at-fault vehicle does not qualify as an underinsured vehicle*

Next, the court considers whether the at-fault vehicle in this case can be considered an underinsured vehicle based on the language of the insurance policy at issue. An interpretation of an insurance policy in North Carolina is a matter of law. ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co., 472 F.3d 99,115 (4th Cir. 2006); N.C. Farm Bureau Mut. Ins. Co. v. Briley, 127 N.C.App. 442, 445, 491 S.E.2d 656,658 (1997). The court acknowledges at the outset that in North Carolina, "the basic principle of insurance law is that policies are to be given a reasonable interpretation." W&J Rives, Inc. v. Kemper Ins. Group, 374 S.E.2d 430 (N.C.App. 1988) (citing Akzona, Inc. v. Am. Credit Indem. Co. of New York, 71 N.C.App. 498, 322 S.E.2d 623 (1984)). Additionally, the court notes that "an insurance contract should be construed as a reasonable person in the position of the insured would have understood it. If the language used in the policy is reasonably susceptible to different constructions, it must be given the construction most favorable to the insured." Id. at 433 (citing Grant v. Emmco Ins. Co., 295 N.C. 39, 243 S.E.2d 894 (1978)).

Plaintiff argues that the estate has incorrectly concluded that the offending vehicle was an underinsured vehicle and that a reasonable review of their policy reveals that property damage coverage is only provided for uninsured motor vehicles, not for underinsured motor vehicles.

The policy language in the "Insuring Agreement of Coverage A" of the endorsement provides, as follows:

> **1.** We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of:
>    **a.** An 'uninsured motor vehicle' because of 'bodily injury'…
>    **b.** An 'uninsured motor vehicle', as defined in Paragraphs **a.** and **c.** of the definition of 'uninsured motor vehicle,' because of property damages…

Thus, plaintiff argues, the language makes clear that property damage coverage is only provided for uninsured motor vehicles.

In further support of that argument, plaintiff contends that consideration of the definition of an "underinsured motor vehicle" makes the distinction palpable. The relevant definition provides:

> b. …An underinsured motor vehicle is…a vehicle…for which the sum of all bodily injury liability bonds or policies…provides at least the amount required by the North Carolina Motor Vehicle Safety and Responsibility Act, but their limits are…:
> . . .
> (3) Reduced by payments to others injured in the 'accident' to an amount which is less than the Limit of Insurance for this coverage.

Definition 4.b(3), Page 4.

Plaintiff argues that a reasonable reading of the above provisions -- when taken together -- conveys that payments for property damages do not set off against the liability limit. Thus, plaintiff argues, the two payments for property damage that were made by plaintiff on behalf of the vehicle operated by the tortfeasor do not reduce the limits of the applicable liability policy. Additionally, plaintiff contends that since the definition requires that an offsetting payment must

be to "others," the payment of $990,356.66 to the estate also does not set off against the liability limit. According to plaintiff, defendant's reading is unreasonable in that it considers the "reduced by payments" clause in isolation of the rest of the policy. Moreover, plaintiff notes that nowhere in the policy does it mention property damage coverage for underinsured vehicles, and that the policy specifically identifies "bodily injury bonds and policies" in the first part of its definition. In short, plaintiff argues that because property damage payments do not operate to set off against the liability limit, there has been no reduction of the liability limits of $1,000,000, and thus the offending vehicle does not constitute an underinsured vehicle according to the insurance policy at hand.

In contrast, the estate argues property damage payments do offset, and that based on the lack of the word "injury" in the definition in subparagraph (3), the at-fault vehicle qualifies as an underinsured motor vehicle. Id. Specifically, the estate contends that since the word "injured" is neither defined nor qualified in subparagraph (3), it can be interpreted to include property damage as well as bodily injury. Additionally, the estate notes that the at-fault vehicle's policy contained a single coverage unit rather than separate limits for property damage and bodily image, thus providing further support for the view that the term "injury" is not limited to "bodily injury."

In support of its position, the estate relies on <u>Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.</u>, 276 N.C. 348, 172 S.E.2d 518 (1970), where the court found that where there is "an absence of definition, nontechnical words are to be given a meaning consistent with the sense they are used in ordinary speech, unless the context clearly requires otherwise." <u>Id.</u> The court further held that "if such a word has more than one meaning in its ordinary usage and if the context does not indicate clearly the one intended, it is to be given the meaning most favorable to the

-11-

policyholder, or beneficiary, since the insurance company selected the word for use." Id. at 354. See also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC, 364 N.C. 1, 692 S.E.2d 605 (2010). According to the estate, the definition of "injury" as laid out by Webster's New World Dictionary, Third College Edition, Simon & Schuster, Inc., 1988 is instructive when determining the term's "ordinary usage." The definition as written provides:

> Injure – **1** to do physical harm or damage to; **2** to offend (one's feelings, pride, etc.); **3** to weaken or otherwise to cause a loss in value to (a business, reputation, etc.); **4** to be unjust to; wrong

Id. In short, the estate argues that if plaintiff had intended to equate the term "injury" with the phrase "bodily injury," it could have defined it as such. However, since the policy did not define the term, and since it can be interpreted to have more than one meaning, reading it as including property damage as well would be most favorable to the beneficiary in this instance. Wachovia Bank, 276 N.C. at 354.

Despite the estate's excellent argument to the contrary, the court agrees with plaintiff and finds that the at-fault vehicle is not an underinsured vehicle and further, that payments for property damages do not set off against the liability limit. As the North Carolina Supreme Court has instructed before, an insurance policy is similar to a contract and as such, "the goal of construction is to arrive at the intent of the parties when the policy was issued." Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co., 550 S.E.2d 271 (N.C.App. 2001) (quoting Woods v. Nationwide Mutual Ins. Co., 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978)). When the language is clear and unambiguous, a policy provision will be accorded its plain meaning. N.C. Farm Bureau v. Briley, 127 N.C.App. at 445, 491, S.E.2d at 658 (citing State Capital Ins. Co. v. nationwide Mutual Ins, Co., 318 N.C. 534, 538, 350 S.E.2d 66,68 (1986)). When language is subject to more than one

interpretation, a policy provision is to be liberally construed to afford coverage whenever possible by reasonable construction. Id. The court also notes that upon giving policies a reasonable interpretation, "the court may consider other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony." Eatman Leasing, Inc., 550 S.E.2d at 281.

Bearing the foregoing principles in mind, the court finds that the policy in question, when read in full, provides that the property damages do not operate to offset against the liability limit. The court finds instructive that to date, no court in any reported case has held that under the language of this insurance policy,[1] property damage payments offset. As such, the court will proceed by interpreting the insurance policy itself.

As noted by the Supreme Court of North Carolina, "ambiguity in the terms of an insurance policy is not established by the mere fact that [a party] makes a claim based on a construction of its language which the company asserts is not its meaning" and that "[n]o ambiguity, calling the above rule of construction into play, exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." Wachovia Bank, 276 N.C. at 354 (citing Squires v. Textile Insurance Co., 250 N.C. 580 (1959)). Here, although the word "injured" is not specifically defined by the policy, the meaning of the term can be construed from its context within the policy. In this instance, the court does not find that the term is subject to more than one interpretation and therefore, there is no ambiguity in the terms of the insurance policy. In finding so, a fair reading of provision subpart 4.b.(3), clearly

---

[1] The court takes notice that the language in insurance policies is typically standardized. The court does acknowledge that there is some case law which directly addresses these specific provisions; however, as previously determined, none of the courts found the property damage payments to reduce the liability limits. *Radil v. National Union Fire Ins Co.*, 207 P.3d 849 (Colo.App. 2008); *Parekh v. Mittadar*, 97 So.3d 433 (La.App.2012); *Pinto v. New Jersey Mfrs. Ins. Co.*, 839 A.2d 134 (N.J.Super A.D. 2004); *Dickson v. Selective Ins. Group*, 833 A.2d 66 (N.J.Super. A.D. 2003).

limits "injury" to bodily injury as expressed by section F, "Additional Definitions," which provides that an "uninsured motor vehicle" is "the sum of all bodily injury liability bonds."[2] Assuming that this definition was put forth by plaintiff to define the limitations of an "uninsured motor vehicle," the court finds that the purpose of the policy was not to allow damages other than bodily injury to offset liability. Further, given that the policy does not provide coverage for underinsured vehicles in any context, the court finds that it is unreasonable to interpret the provision otherwise.

Therefore, the two payments, amounting to $9,643.39, made by plaintiff for property damage on behalf of the at-fault vehicle, do not offset against the liability limit. Similarly, since definition 4.b., as provided above, requires that an offsetting payment be made to others, not to the policy holder himself, the payment by plaintiff of $990,356.66 to the estate does not reduce the limits of the applicable liability policy. Accordingly, the at-fault vehicle is not an underinsured vehicle under the meaning described in plaintiff's policy.

3. *Plaintiff's claim that under the other insurance provisions of the UM/UIM endorsement, any potential underinsured motorist benefits are limited to $9,643.39*

The final claim made by plaintiff which the court will consider is whether the "Other Insurance" clause of the policy applies. Based on the court's resolution of plaintiffs' uninsured motor vehicle claim, the court need not decide whether the Other Insurance provisions are applicable to the claim at hand, since it has found the at-fault vehicle is not an underinsured motor vehicle; thus, this provision does not apply.

---

[2] While this language is confusing, it is set out by the policy and clearly evinces an intent to limit the term "injury" to "bodily injury," which is critical to this issue.

The court has, however, reviewed the substantive arguments as follows and finds that even if the Other Insurance clause of the endorsement were to apply, the court agrees with plaintiff, and finds that any potential underinsured motorist benefits are limited to $9,643.39.

In making its analysis, the court must first look to the provisions in plaintiff's insurance policy that are at dispute in this claim. Section D of Form 2116 includes the following limit of insurance:

> **D. Limits of Insurance**
>
> 1. Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorist Coverage show in the Declarations.
>
> 2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this coverage Part.
>
> We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.
>
> We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law exclusive of nonoccupational disability benefits.

The court finds it clear from this provision that plaintiff's policy provides a limit of $1,000,000 applicable to the estate's claim. It is undisputed that plaintiff's policy prevents a claimant from obtaining a double recovery as expressed in their Commercial Auto provision Form CA 2116. The parties disagreement thus stems from defendant's contention that the language of Form CA 2116 provides a credit against the total value of the UIM claim, as opposed to a credit against the policy's coverage limits. In other words, whether the credit paid by defendant's insurance policy would result in an exposure to plaintiff of $1,000,000 or would reduce plaintiff's exposure to less than $10,000.

The pertinent language of Section E (1)(a) Form CA 2116 provides, as follows:

**E. Changes In Conditions:**

If there is other applicable insurance available under one or more policies or provisions of coverage:
    I.    The maximum recover under Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

Plaintiff argues since Chapter 20-279.21(b)(4) of the North Carolina General Statutes applies, it supersedes any other limitation otherwise imposed by the Other Insurance language. Further, plaintiff contends the Other Insurance provisions of the policy limit recovery to the same amount of the statute, and thus the UIM coverage is limited to $9,643.39 regardless of whether the court finds that the statute applies.

As explained above, the court does not agree that the statute applies, but rather that if applicable, the language in plaintiff's policy controls. In response to plaintiff's argument, the estate contends that the Other Insurance clause does not apply to the coverage dispute addressed in this case. Specifically, the estate argues that plaintiff's liability policy provides a credit against the total value of the UIM claim for funds paid toward that claim by any applicable liability insurance as opposed to a credit against its coverage limits. In short, the estate asserts that under the Other Insurance provision of the policy, a credit against the total value of the claim does not limit plaintiff's coverage to less than $10,000 for an underinsured motor vehicle.

The court notes that it must enforce underinsured motorist provisions of plaintiff's policy as written and "if the terms of the policy are 'plain, unambiguous, and susceptible of only one

reasonable construction, the courts will enforce the contract according to its terms.'" Register v. White, 568 N.C. 691, 695, 599 S.E.2d 549, 553 (2004) (quoting Klien v. Avemco Ins. Co., 289 N.C. 63, 66, 220 S.E.2d 595, 597 (1975)). Additionally, the court follows the holding laid out in Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506 (1978), which held that "if the meaning of the words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder." Id. Further, as the court noted above, it must interpret policy terms coherently, so as to allow for the various terms of the policy to be consistently construed, and if possible, to permit "every word and every provision . . . [t]o be given effect." Woods, 295 N.C. at 506. Although any ambiguities are to be resolved against the insurer, the court cannot overlook certain provisions of the policy if doing so would be inconsistent with the policy as a whole. Id.

In interpreting the policy as it has, the court finds that the policy provides a credit against its coverage limits for the amounts paid under any applicable liability policy. This is supported by the language of provision D, which provides that "*the most* [plaintiff's policy] will pay for all damages resulting from *any one* "accident" is the *limits* of the Uninsured Motorist Coverage Shown in the Declarations." To interpret the provision otherwise would cause plaintiff to make duplicate payments and prevent the court from interpreting the policy consistently as a whole. Accordingly, the court holds that if applicable, the Other Insurance clause limits the underinsured motorist benefits to less than $10,000.

## IV. Conclusion

For reasons stated herein, the court finds that the Financial Responsibility Act does not require insurers to provide insurance for policies that are solely fleet policies, that the at-fault

vehicle is not an underinsured motorist vehicle, and that where applicable, the Other Insurance clause of plaintiff's policy controls and limits the underinsured motorist benefits to $9,643.39. Having thus considered both parties motions for summary judgment and reviewed the pleadings, the court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiffs' Motion for Summary Judgment (#22) is **GRANTED** and the estate's Motion for Summary Judgment (#25) is **DENIED**.

Signed: August 6, 2018

*[signature]*

Max O. Cogburn Jr.
United States District Judge